UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD LEE STRAND,<br><br>    Plaintiff,<br><br>    v.<br><br>JOE A. LIZZARAGA, et al.,<br><br>    Defendants. | No. 2:18-cv-2624 MCE DB P<br><br><br>ORDER |

Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983 and has requested authority pursuant to 28 U.S.C. § 1915 to proceed in forma pauperis. (ECF Nos. 1, 2, 5). This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1)(B).

For the reasons stated below, plaintiff's motion to proceed in forma pauperis shall be granted. Plaintiff will also be given the opportunity to amend the complaint.

**I.    IN FORMA PAUPERIS APPLICATION**

Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a). (See ECF Nos. 2, 5). Accordingly, the request to proceed in forma pauperis will be granted.

Plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1). By this order, plaintiff will be assessed an initial partial filing fee in

accordance with the provisions of 28 U.S.C. § 1915(b)(1). By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of Court. Thereafter, plaintiff will be obligated for monthly payments of twenty percent of the preceding month's income credited to plaintiff's prison trust account. These payments will be forwarded by the appropriate agency to the Clerk of Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

## II.   SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)-(2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989); Franklin, 745 F.2d at 1227.

A complaint, or portion thereof, should only be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light

////

most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

### III. PLEADING STANDARD

#### A. Generally

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under Section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

#### B. Linkage Requirement

Under Section 1983, a plaintiff bringing an individual capacity claim must demonstrate that each defendant personally participated in the deprivation of his rights. See Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). There must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Ortez v. Washington County, State of Oregon, 88 F.3d 804, 809 (9th Cir. 1996); see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Government officials may not be held liable for the actions of their subordinates under a theory of respondeat superior. Iqbal, 556 U.S. at 676 (stating vicarious liability is inapplicable in Section 1983 suits). Since a government official cannot be held liable under a theory of vicarious liability in Section 1983 actions, plaintiff must plead sufficient facts showing that the official has violated the Constitution through his own individual actions by linking each named defendant with some affirmative act or omission that demonstrates a violation of plaintiff's federal rights. Id. at 676.

## IV. PLAINTIFF'S COMPLAINT

### A. Plaintiff's Claims

Plaintiff, an inmate who was housed at Mule Creek State Prison ("MCSP") at the time of the events in question, names Warden Joe A. Lizarraga; correctional officers P. Gann, M. Culum, R. Colby, Negrete, Chelgren, and Does 1, 2 and 3; correctional captain K. Luther; CDCR correctional captain and appeals examiner R. Briggs; correctional lieutenants S. Bacca and R. Van Conett; licensed vocational nurse Arellano; registered nurse Smith, and Chief of CDCR Office of Appeals M. Voong as defendants.[1] (See ECF No. 1 at 1-4). He sues each of them in their official and individual capacities. (See id. at 2-4).

Plaintiff contends that his rights to be free from cruel and unusual punishment and/or excessive force, deliberate indifference to his serious medical needs and retaliation were violated when: (1) on December 13, 2017, defendant Gann intentionally shot him in the chest with a 40 mm cannon during a fight between two inmates that was taking place some distance away from where he was in the dining hall; (2) the same day defendant Arellano failed to send him to "CTC" for examination of the injury and defendant Smith cleared him for return to his cell despite the fact that he had reported to defendant Arellano that he had pain in his chest and difficulty breathing and had requested a chest x-ray; (3) on December 14, 2017, while leaving the dining hall, defendant Colby – a purported friend of defendant Gann's – physically accosted him[2] and threatened him, and his cell was repeatedly searched several times during the weeks thereafter by

---

[1] Unless otherwise stated herein, all defendants are employees at MCSP.

[2] Plaintiff states that he is "mobility impaired" and uses a cane to walk. (See ECF No. 1 at 6, 8).

4

1  defendants Negrete, Chelgren and Doe 1; (4) on April 24, 2018, defendant Does 2 and 3 told him
2  to move to the upper bunk despite the fact that his ADA inmate status which required lower bunk
3  housing was readily available to them; (5) in May 2018, defendants Culum, Bacca, and Van
4  Conett facilitated his placement in administrative segregation and loss of credits and canteen
5  privileges when he refused to do so, and (6) defendants Voong, Briggs, Luther and Lizarraga
6  upheld the finding of guilt related to plaintiff's refusal to be assigned to a new bunk and/or upheld
7  his subsequent placement in administrative segregation.  (See ECF No. 1 at 5-10).

8  **B.   Alleged Harm**

9  Plaintiff contends that the shooting incident has caused extreme shock and pain and has
10 aggravated a preexisting back injury.  (See ECF No. 1 at 5).  As a result of the incident, plaintiff
11 contends, he experiences panic attacks when he enters the dining room or when he hears a
12 weapon fired.  (See id.).  He further contends that treatment of his injuries was delayed and that as
13 a result, he has experienced unnecessary pain and suffering.  (See ECF No. 1 at 10).

14 Plaintiff also claims that his placement in administrative segregation subjected him to
15 pain, discomfort and mental stress.  (See ECF No. 1 at 8).  Also implicit in the pleading is
16 plaintiff's assertion that the placement as well as the resulting loss of credits and canteen
17 privileges was improper and should be remedied.  (See id.).

18 Finally, plaintiff asserts that defendants' harassment is ongoing and has put him in fear for
19 his safety.  (See ECF No. 1 at 6).  He believes that defendants have no regard for his status as a
20 disabled person and that they will continue to retaliate against and harass him.  (See id.).

21 **C.   Request for Relief**

22 Plaintiff requests compensatory and punitive damages in varying amounts of the
23 defendants.  (See ECF No. 1 at 11-12).  He asks for a total of $4,600,000.00 in compensatory
24 damages and $5,600,000.00 in punitive damages.  (See id. at 12).

25 **V.   APPLICABLE LAW**
26 **A.   Excessive Force**

27 "In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places
28 restraints on prison officials, who may not . . . use excessive physical force against prisoners."

5

Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citing Hudson v. McMillian, 503 U.S. 1 (1992)). "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6-7 (brackets added) (referencing Whitley v. Albers, 475 U.S. 312 (1986)).

"[T]he extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation." Hudson, 503 U.S. at 7 (internal quotation marks omitted) (citing Whitley 475 U.S. at 321. "When determining whether the use of force was wanton and unnecessary, evaluating the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response may also be proper to evaluate. See Hudson, 503 U.S. at 7 (citation omitted). The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, it but does not end it. Hudson, 503 U.S. at 7.

**B.     Cruel and Unusual Punishment**

"The Eighth Amendment proscribes the infliction of cruel and unusual punishment on prisoners. Whether a particular event or condition in fact constitutes 'cruel and unusual punishment' is gauged against 'the evolving standards of decency that mark the progress of a maturing society.' " Schwenk v. Hartford, 204 F.3d 1187, 1196 (9th Cir. 2000) (quoting Hudson, 503 U.S. at 8). "After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Whitley, 475 U.S. at 319 (alteration in original) (internal quotation marks omitted) (quoting Ingraham v. Wright, 430 U.S. 651, 670 (1977)).

"It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." Id. "To be cruel and unusual punishment,

6

conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." Id.  Accordingly, "courts considering a prisoner's claim must ask:  1) if the officials acted with a sufficiently culpable state of mind; and 2) if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." Somers v. Thurman, 109 F.3d 614, 622 (9th Cir. 1997) (citing Hudson, 503 U.S. at 8).

### C. Deliberate Indifference to Serious Medical Needs

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." Farmer, 511 U.S. at 832 (internal quotation marks and citations omitted).  "[A] prison official violates the Eighth Amendment only when two requirements are met.  First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Id. at 834 (internal quotation marks and citations omitted).  Second, the prison official must subjectively have a sufficiently culpable state of mind, "one of deliberate indifference to inmate health or safety." Id. (internal quotation marks and citations omitted).  The official is not liable under the Eighth Amendment unless he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.  Then he must fail to take reasonable measures to abate the substantial risk of serious harm. Id. at 847.  Mere negligent failure to protect an inmate from harm is not actionable under Section 1983. See id. at 835.

### D. Retaliation

To state a viable First Amendment retaliation claim, a prisoner must allege five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); Jones v. Williams, 791 F.3d 1023, 1035 (9th Cir. 2015) (citing Rhodes).  A plaintiff who intends to assert a retaliation claim must

7

show that the defendant was aware of plaintiff's prior protected conduct and that the protected conduct was "the 'substantial' or 'motivating' factor" behind the defendant's alleged misconduct. Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009).

## VI. DISCUSSION[3]

### A. Defendant Gann

Plaintiff has stated a cognizable claim of excessive force against defendant Gann. (See ECF No. 1 at 5). Plaintiff has stated that on December 13, 2017, in A-Facility's dining hall, an altercation broke out between two inmates who were located five rows away from where plaintiff was situated. (See id.). He contends that as the fight came to an end, defendant Gann, who was in an elevated position in a gun tower, shot him in his chest with a 40 mm cannon weapon. (See generally id.). Defendant Gann's hit, plaintiff asserts, was direct, intentional and not the result of a ricochet. (See ECF No. 1 at 5). When plaintiff asked defendant Gann why he shot him, plaintiff asserts that in response, defendant Gann is said to have stared at plaintiff in a "menacing" way.[4] (See id.).

Construing these facts in a light that is most favorable to plaintiff,[5] they make a threshold showing that defendant Gann's shooting of plaintiff was not done in a good faith effort to maintain or restore discipline; it was likely done maliciously to cause harm to plaintiff. See generally Hudson, 503 U.S. at 6-7. Therefore, defendant Gann will be required to address this claim.

////

////

---

[3] The claims in this action are neither presented in chronological order nor clearly separated. (See generally ECF No. 1 at 5-10). Some of the four "claims" listed contain more than one cause of action. (See generally id.). Therefore, to facilitate a clearer discussion, the court shall address each of plaintiff's claims in as close to chronological order as possible, and it will address each claim by defendant.

[4] Plaintiff also asserts that prior to the shooting incident, defendant Gann had repeatedly "stared at [him] intimidatingly for no apparent reason." (See ECF No. 1 at 5) (brackets added).

[5] This court is obligated to liberally construe the pleadings of pro se litigants. See Estelle v. Gamble, 429 U.S. 97, 106 (1976) (stating pro se documents are to be liberally construed); see also Haines v. Kerner, 404 U.S. 519, 520 (1972) (stating pro se pleadings are held to less stringent standard than those drafted by lawyers).

### B. Defendants Arellano and Smith

Plaintiff has also stated cognizable deliberate indifference to serious medical needs claims against defendants Arellano and Smith. Defendant Arellano examined plaintiff on December 13, 2017, just after he had been shot in the chest with a 40 mm "direct impact round." (See ECF No. 1 at 10). At that time, plaintiff states that he told defendant Arellano that he had chest pain which was intensified when he took deep breaths, and he thought he had broken ribs. (See id.). Thereafter, plaintiff contends that defendant Arellano notified defendant Smith of plaintiff's injuries. However, defendant Smith did not take plaintiff over to "CTC" for an examination. Instead, she cleared plaintiff to be returned to his cell. (See id.).

The shot to the chest with a direct impact round which purportedly left plaintiff with pain in his chest and with difficulty breathing, on its face, left plaintiff in a state of serious medical need. Defendants Arellano's and Smith's failure to do anything to address plaintiff's clearly expressed complaints of pain and of difficulty breathing, and defendant Smith's subsequent decision to return plaintiff to his cell, ostensibly constitute their failures to take reasonable measures to abate the pain plaintiff was experiencing as well as to abate any subsequent substantial risk of serious harm to him.[6] See generally Farmer, 511 U.S. at 847.

For these reasons, plaintiff has stated cognizable claims against defendants Arellano and Smith. As a result, they will be required to respond to them.

### C. Defendant Colby

Plaintiff's claim that on December 14, 2017, defendant Colby – a "good friend" of defendant Gann's – violated his right to be free from retaliation when he aggressively grabbed plaintiff, threw him up against the wall and threatened him, despite the fact that plaintiff uses a cane and was wearing a vest which indicated that he is mobility impaired (see ECF No. 1 at 6) is not cognizable. At the outset, verbal threats and harassment alone do not rise to the level of constitutional violations and therefore, do not state cognizable claims under Section 1983. See

---

[6] It is unclear at this point whether defendant Arellano, a licensed vocational nurse, had the authority to schedule an x-ray for plaintiff, to send him over to "CTC" for an examination, or to override the decision of defendant Smith – a registered nurse – to return plaintiff to his cell. Defendants will be free to address this question in their response to the complaint.

9

Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987) (citation omitted); Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987).

Moreover, as a retaliation claim, plaintiff has failed to indicate that these actions of defendant Colby were done because plaintiff had exercised a constitutionally-protected right, such as the filing of grievances (see generally ECF No. 1 at 6-7), and that those actions were the motivating factor behind defendant Colby's actions. See generally Brodheim, 584 F.3d at 1271 (stating substantial or motivating factor requirement).

Finally, to the extent one could consider defendant Colby's actions violation of plaintiff's right to personal safety, a single, isolated incident does not amount to an "excessive" or "substantial" risk to inmate safety. See, e.g., LeMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir. 1993) (finding shackling dangerous inmate in shower does not create sufficiently unsafe condition even if inmate might fall; slippery prison floors do not state arguable claim for cruel and unusual punishment). In any event, plaintiff fails to identify any significant harm he experienced from the incident. (See generally ECF No. 1 at 6-7).

For these reasons, plaintiff's claim against defendant Colby, as currently stated, is not cognizable either as a retaliation claim or a personal safety claim. Plaintiff will, however, be given the opportunity to amend it.

**D.  Defendants Negrete, Chelgren and Doe 1**

Plaintiff's claim that defendants Negrete, Chelgren and Doe 1 violated his Eighth Amendment right to be free from cruel and unusual punishment when between December 14, 2017, and January 29, 2018, they participated in three searches of plaintiff's cell, leaving it trashed and in shambles each time (see ECF No. 1 at 6-7) is cognizable. An identification of "Doe 1," however, will need to be made.

Generally speaking, random searches are essential to the effective security of penal institutions. See Hudson v. Palmer, 468 U.S. 517, 529 (1984). Consequently, a prisoner does not have a subjective expectation of privacy in his prison cell, and the Fourth Amendment proscription against unreasonable searches does not apply therein. See Hudson, 468 U.S. at 525-26; Somers, 109 F.3d at 617 (citing Hudson).

However, harassment and threats coupled with conduct implicating the Eighth Amendment's proscription against cruel and unusual punishment, such as malicious cell searches and calculated harassment unrelated to prison needs, may present a claim under Section 1983. See Vigliotto v. Terry, 873 F.2d 1201, 1203 (9th Cir. 1989) (finding Eighth Amendment protection from prison searches conducted only for calculated harassment); see Grant v. Hernandez, No. C 96-1788 TEH, 1997 WL 118257, at *2 (N.D. Cal. Mar. 5, 1997).

Here, plaintiff has stated that defendants Negrete's Chelgren's and Doe 1's repeated searches of his cell – three of them within a five-to-six-week period – were not random; they were done to harass him. (See ECF No. 1 at 6-7). Defendant Negrete's alleged statement to plaintiff that he could search plaintiff or his cell when he wanted to and that plaintiff should expect more searches if he continued to "keep acting like a crybaby," (see id. at 6) supports plaintiff's harassment allegation. Additionally, plaintiff's claim that this pattern of harassment by defendants made him fear for his safety on a daily basis (see id.) conceivably establishes harm.

Accordingly, defendants Negrete and Chelgren will be required to respond to this claim. Plaintiff will also be given the opportunity to identify "Doe 1" in an amended complaint. Should plaintiff be unable to do so, however, any claims plaintiff may have against Doe 1 may not proceed.

**E.   Defendant Does 2 and 3**

Plaintiff's claim that defendant Does 2 and 3 violated his Eighth Amendment rights[7] when, on April 24, 2018, they directed plaintiff to move to the upper bunk despite his disabilities so they could give the lower bunk to another inmate is substantively cognizable. This is because on its face, taking plaintiff's lower bunk away from him when he had a medical chrono for a lower bunk and he was physically unable to get up to an upper bunk is not compatible with the evolving standards of decency that mark the progress of a maturing society. See Wright v. Rushen, 642 F.2d 1129, 1133 (9th Cir. 1981).

---

[7] Although plaintiff has alleged that the actions of defendant Does 2 and 3 violated his Eighth Amendment right to be free from cruel and unusual punishment (see ECF No. 1 at 8-9), the court construes the claim as one of deliberate indifference to serious medical need.

1    Prison officials may not deprive inmates of basic necessities of life, including adequate
2  food, clothing, shelter, sanitation, medical care and personal safety.  See Hoptowit v. Ray, 682
3  F.2d 1237, 1258 (9th Cir. 1982), overruled on other grounds by Sandin v. Conner, 515 U.S. 472
4  (1995).  Arguably, requiring plaintiff to move to the upper bunk when plaintiff had a medical
5  chrono stating that he was to be housed on a lower bunk and he was physically unable to climb up
6  to the upper bunk, effectively deprived plaintiff of a place of his own to sit and sleep in his cell.[8]
7  Substantively, this states a cognizable claim of deliberate indifference to serious medical need in
8  violation of plaintiff's Eighth Amendment rights.  However, in order for plaintiff to be able to
9  proceed with this claim, he must first provide the court with the identities of defendant Does 2
10  and 3.

11    Plaintiff will be given an opportunity to amend this claim to inform the court as to how
12  long plaintiff and what harm was incurred when he was reassigned to an upper bunk.  Plaintiff
13  must provide the identities of defendant Does 2 and 3.  If he is unable to provide their identities,
14  he will not be permitted to proceed with this claim.

### F. Defendant Culum

16    Plaintiff's claim that defendant Culum violated his Eighth Amendment right to be free
17  from cruel and unusual punishment when on May 2, 2018, defendant Culum wrote up a
18  disciplinary report and an order to send plaintiff to administrative segregation (see ECF No. 1 at
19  8-9) is not cognizable.  First, plaintiff does not have a liberty interest in remaining in the general
20  population or being free from administrative segregation.  Hewitt v. Helms, 459 U.S. 460, 466-67
21  (1983); Toussaint v. McCarthy, 801 F.2d 1080, 1091 (9th Cir. 1985), abrogated in part on other
22  grounds by Sandin v. Conner, 515 U.S. 472 (1995).

23    Second, although plaintiff may have a right to reasonable accommodations as a person
24  with mobility issues, "[b]eing a disabled inmate does not bestow upon [p]laintiff a
25  constitutionally protected entitlement to make random demands of staff in general regarding what

---

[8] Precisely how long plaintiff was ordered to be on the top bunk is unclear.  (See generally ECF No. 1 at 8-9).  In an amended complaint, plaintiff must provide this information, as it is relevant to the assessment of harm plaintiff was caused due to the reassignment.

12

he asserts at any given moment to be necessary accommodations in routine situations." Castle v. Scribner, No. 1:04-cv-06624 SMS PC, 2008 WL 752471, at *9 (E.D. Cal. Mar. 19, 2008) (brackets added). "There are processes in place for ensuring that an inmate's[] needs are accommodated based on his individual situation." See id. (brackets added).

Here, plaintiff states that on the day in question, defendant Does 2 and 3 told plaintiff to move to from his lower bunk to the upper bunk because they were giving his lower bunk to another inmate. (See ECF No. 1 at 8). Plaintiff does not state that he went through the proper channels to contest this decision. (See generally ECF No. 1 at 8-9). Instead, believing that the directive from defendant Does 2 and 3 was "just a continuation of the harassment" to which he had been subjected in recent months (see id. at 8), plaintiff states that he refused to move to the upper bunk because: (1) he had a medical chrono which stated that he was only to be housed on a lower bunk, and (2) he was physically unable get up to a top bunk. (See id.).

Third, plaintiff neither alleges, nor does it appear that plaintiff was denied due process during his disciplinary hearing. See Wolff v. McDonnell, 418 U.S. 539, 563 (1974) (identifying items to be provided to prisoners during revocation hearings).[9] On the contrary, plaintiff states that he was given the opportunity to and did provide "overwhelming evidence" that he was not supposed to be assigned to an upper bunk. (See ECF No. 1 at 9). Moreover, the court again notes that plaintiff admits that he refused to move to the upper bunk assigned to him. (See id. at 8). Thus, there appears to be some evidence in the record to support defendant Culum's decision to place plaintiff in administrative segregation. See Superintendent v. Hill, 472 U.S. 445, 455 (1994) (stating where "some evidence" exists in record which supports decision of hearing officer, due process is satisfied if Wolff requirements are also met).

////

---

[9] The Wolff procedural due process requirements are: (1) advance, written notice of violation; (2) provision of at least 24 hours to prepare for committee appearance; (3) written statement of fact-finding; (4) the right to present witnesses and evidence where it would not be unduly hazardous to institutional safety; (5) an impartial decision-making body, and (6) assistance if inmate is illiterate or if issues are complex. Wolff, 418 U.S. at 564-70; see generally Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir. 1984). These requirements protect prisoners from "arbitrary actions extinguishing their privileges." Hanrahan, 747 F.2d at 1140 (citation omitted).

For these reasons, plaintiff's claim against defendant Culum for writing up a disciplinary report and an order to send plaintiff to administrative segregation, as currently presented, is not cognizable. Plaintiff will, however, be given the opportunity to address the stated deficiencies in this claim and/or to provide additional information regarding whether he received adequate due process at his disciplinary hearing via amended complaint.

### G. Defendant Van Conett

Plaintiff's claim that defendant Van Conett violated his Eighth Amendment right to be free from cruel and unusual punishment when, on May 8, 2018, at plaintiff's 115 hearing, he found that plaintiff was guilty of refusing to accept assigned housing and of delaying a correctional officer and thereafter, levied a sixty-one-day credit loss and ninety-day canteen privilege loss against him (see ECF No. 1 at 8-9) is not cognizable for a couple of reasons. First, prison officials are to be accorded wide-ranging deference in the adoption and execution of policies and practices that are needed to preserve internal order and discipline in order to maintain institutional security. See Whitley, 475 U.S. at 321-22 (citation omitted). In other words, defendant Van Conett had the authority to mete out a suitable, yet reasonable punishment to plaintiff.

Next, plaintiff has no liberty interest in the processing of appeals. See Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003). Moreover, plaintiff's sixty-one-day loss of credits and ninety-day loss of canteen privileges does not constitute an "atypical and significant hardship" on plaintiff "in relation to the ordinary incidents of prison life." See Sandin, 515 U.S. at 483-84; Ramirez, 334 F.3d at 860; see, e.g., Salinas v. Montgomery, No. 3:19-cv-0755 AJB-RBB, 2019 WL 2191349, at *5 (S.D. Cal. May 21, 2019) (stating loss of ninety days of good-time credit, without more, was insufficient to show atypical and significant hardship as result of disciplinary process).

Finally, to the extent plaintiff's underlying argument in this claim is that he was improperly deprived of his credits,[10] a due process claim that challenges the loss of good time

---

[10] Whether plaintiff intends with this claim to allege that he is entitled to earlier release from prison is unclear, in part because injunctive relief is not one of the remedies he seeks. (See

14

1  credits as a result of an adverse prison disciplinary hearing is not cognizable under Section 1983

2  and must be raised by way of habeas corpus. See Blueford v. Prunty, 108 F.3d 251, 255 (9th Cir.

3  1997).

4      For these reasons, this cruel and unusual punishment claim against defendant Van Conett

5  is not cognizable, and providing plaintiff with an opportunity to amend it would be futile.

6  Therefore, plaintiff will not be given the opportunity amend this claim, and defendant Van Conett

7  will not be required to address it.

8      **H.  Defendants Bacca, Voong, Briggs, Luther and Lizarraga**

9      Plaintiff's claim that defendants Bacca, Voong, Briggs, Luther and Lizarraga also violated

10 his right to be free from cruel and unusual punishment when they either signed off on or upheld

11 decisions of their subordinates regarding plaintiff's placement in administrative segregation (see

12 ECF No. 1 at 8-9), is not cognizable, either.  It has already been established that plaintiff has no

13 cause of action for having been placed in administrative segregation.  Nevertheless, even if

14 plaintiff did have a claim for a wrongful placement, these defendants still could not be held liable

15 under a theory of respondeat superior.  This is because claims of supervisorial liability are not

16 cognizable under Section 1983.  See Iqbal, 556 U.S. at 676.  Thus, for any claim against these

17 defendants to be viable, plaintiff would have to show a causal link between a wrongful and

18 constitutionally actionable placement in administrative segregation and the actions of each one of

19 these defendants.  See Jones, 297 F.3d at 934 (stating personal involvement requirement).

20     Plaintiff's claims of liability against defendants Bacca, Voong, Briggs, Luther and

21 Lizarraga in their capacities as supervisors are not cognizable.  Plaintiff may, however, be able to

22 allege that each of these defendants personally participated in wrongfully placing him in

23 administrative segregation.  Therefore, he will be given an opportunity to amend this claim.

24 **VII.  CONCLUSION**

25     In sum, plaintiff has stated cognizable claims against defendants Gann, Arellano, Smith,

26 Negrete, Chelgren, and Does 1, 2 and 3.  With respect to defendant Does 1, 2 and 3, however,

27

28 generally ECF No. 1 at 11-12).

1  plaintiff must identify them prior to the end of discovery, or they will be dismissed from this
2  action.

3  Plaintiff has not stated cognizable claims against defendants Van Conett, Colby, Culum,
4  Bacca, Voong, Briggs, Luther or Lizarraga.  The claim against defendant Van Conett cannot be
5  rendered cognizable by amendment.  Consequently, plaintiff will not be given the opportunity to
6  amend it.

7  Conversely, because the claims against defendants Colby, Culum, Bacca, Voong, Briggs,
8  Luther and Lizarraga have the potential to be cognizable if plaintiff provides additional, relevant
9  information, he will be permitted to amend the claims against these individuals.

## VIII.  OPTIONAL LEAVE TO AMEND

Plaintiff is being given the opportunity to amend the complaint.  If plaintiff chooses to file an amended complaint, it will take the place of the original complaint.  See Lacey v. Maricopa Cty., 693 F.3d 896, 925 (9th Cir. 2012) (amended complaint supersedes original).  Any amended complaint should observe the following:

An amended complaint must identify as a defendant only persons who personally participated in a substantial way in depriving plaintiff of a federal constitutional right.  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (a person subjects another to the deprivation of a constitutional right if he does an act, participates in another's act or omits to perform an act he is legally required to do that causes the alleged deprivation).

An amended complaint must also contain a caption including the names of all defendants. Fed. R. Civ. P. 10(a).  Plaintiff may not change the nature of this suit by alleging new, unrelated claims. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

Any amended complaint must be written or typed so that it is complete in itself without reference to any earlier filed complaint. See L.R. 220 (E.D. Cal. 2009).  This is because an amended complaint supersedes any earlier filed complaint, and once an amended complaint is filed, the earlier filed complaint no longer serves any function in the case.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967) ("The amended complaint supersedes the original, the latter

////

being treated thereafter as non-existent."), overruled on other grounds by Lacey v. Maricopa Cty., 693 F.3d 896 (2012).

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to proceed in forma pauperis (ECF No. 2) is GRANTED;

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the appropriate agency filed concurrently herewith;

3. Plaintiff's complaint (ECF No. 1) is DISMISSED with leave to amend, and

IT IS FURTHER ORDERED that within sixty days of the date of this order, plaintiff shall either:

1. File an amended complaint, or

2. Inform the court in writing that:

   a. He wishes to proceed only on the cognizable claims identified herein, and

   b. He voluntarily dismisses any and all other defendants and claims in this action pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).

Failure to take one of these courses of action within the time allotted may result in the dismissal of this action for failure to prosecute and/or failure to obey a court order. See Fed. R. Civ. P. 41(b); see also L.R. 110.

Dated: May 2, 2020

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:13
DB/ORDERS/ORDERS.PRISONER.CIVIL RIGHTS/stra2625.scrn.revd